IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

NELDA DAVIS,                             §
                                         §
                    Plaintiff,           §
                                         §   Civil Action No. 3:14-CV-1698-D
VS.                                      §
                                         §
THE CITY OF FORT WORTH, et al.,          §
                                         §
                    Defendants.          §

MEMORANDUM OPINION
AND ORDER

        Defendants move under 28 U.S.C. § 1404(a) to transfer this removed action to the Fort

Worth Division of this court.  For the reasons that follow, the court grants the motion.

I

        This is a civil action that was filed in Dallas County Court and removed to this court

based on federal question jurisdiction and to this division based on the location of the court

from which it was removed.  In her county court petition, plaintiff Nelda Davis ("Davis")

alleges claims against defendants the City of Fort Worth ("the City"), two police officers of

the Fort Worth Police Department, WGH Heritage, Inc. ("WGH"), Westchester Prime

Management, LLC, a/k/a Westchester Plaza ("Westchester Prime"), and Brian Bryant

("Bryant") stemming from an incident that occurred at an assisted living facility in Fort

Worth, where Davis worked.  Defendants move to transfer the suit to the Fort Worth Division

under 28 U.S.C. § 1404(a).  Davis opposes the motion.

II

Section 1404(a) provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  "The decision to transfer is made to prevent waste of time, energy, and money and to protect litigants, witnesses, and the public against unnecessary inconvenience and expense."  *Bank One, N.A. v. Euro-Alamo Invs., Inc.*, 211 F.Supp.2d 808, 811 (N.D. Tex. 2002) (Fitzwater, J.) (citing *Stabler v. N.Y. Times Co.*, 569 F. Supp. 1131, 1137 (S.D. Tex. 1983)).  "The court cannot transfer a case where the result is merely to shift the inconvenience of the venue from one party to the other."  *Sivertson v. Clinton*, 2011 WL 4100958, at *3 (N.D. Tex. Sept. 14, 2011) (Fitzwater, C.J.) (citing *Fowler v. Broussard*, 2001 WL 184237, at *6 (N.D. Tex. Jan. 22, 2001) (Fitzwater, J.)).  Moreover,

> [t]he plaintiff's choice of venue is . . . entitled to deference, and therefore the party seeking transfer has the burden to show good cause for the transfer.  The burden on the movant is "significant," and for a transfer to be granted, the transferee venue must be "clearly more convenient than the venue chosen by the plaintiff."

*AT&T Intellectual Prop. I, L.P. v. Airbiquity Inc.*, 2009 WL 774350, at *1 (N.D. Tex. Mar. 24, 2009) (Lynn, J.) (footnotes omitted) (quoting *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc) ("*Volkswagen II*")).

The court must decide as a preliminary question "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed."  *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) (per curiam) ("*Volkswagen I*"); *see*

*also Volkswagen II*, 545 F.3d at 312 ("The preliminary question under § 1404(a) is whether

a civil action 'might have been brought' in the destination venue.").  Once the court resolves

this issue, the court must in deciding whether to transfer the case evaluate "a number of

private and public interest factors, none of which are given dispositive weight." *Volkswagen*

*I*, 371 F.3d at 203 (citing *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th

Cir. 2004)).

> The private concerns include: (1) the relative ease of access to
> sources of proof; (2) the availability of compulsory process to
> secure the attendance of witnesses; (3) the cost of attendance for
> willing witnesses; and (4) all other practical problems that make
> trial of a case easy, expeditious and inexpensive.  The public
> concerns include: (1) the administrative difficulties flowing
> from court congestion; (2) the local interest in having localized
> interests decided at home; (3) the familiarity of the forum with
> the law that will govern the case; and (4) the avoidance of
> unnecessary problems of conflict of laws [or] the application of
> foreign law.

*Id.* (citations omitted).  "Although [these] factors are appropriate for most transfer cases, they

are not necessarily exhaustive or exclusive."  *Volkswagen II*, 545 F.3d at 315.  Defendants

must establish "good cause" for transferring the case, meaning that, "in order to support

[their] claim for a transfer, [they] must satisfy the statutory requirements and clearly

demonstrate that a transfer is '[f]or the convenience of parties and witnesses, in the interest

of justice.'"  *Id.* (quoting § 1404(a)) (final brackets in original ).

III

Defendants do not move to transfer this case to another judicial district; rather, they move to transfer this case to another division within this judicial district. The court holds, and the parties do not dispute, that Davis could have brought this action in the Fort Worth Division. *See* 28 U.S.C. § 1391. At least three of the defendants—the City and the officers of the Fort Worth Police Department sued in their individual capacities—are residents of Tarrant County, which is within the Fort Worth Division. *See* 28 U.S.C. § 124(a)(2). Accordingly, the court holds that the lawsuit could have been filed there.

IV

Before addressing the public and private interest factors, the court determines the weight to be accorded Davis' choice of forum. "A plaintiff's choice is normally entitled to deference, but when she files suit outside her home forum, the weight accorded to the choice is diminished." *Sivertson*, 2011 WL 4100958, at *4 (citations omitted). Davis' choice of the Dallas Division is not entitled to significant weight. Davis alleges in her county court petition that she is a resident of Tarrant County, which is within the Fort Worth Division. It is undisputed that a substantial part (if not all) of the events or omissions giving rise to Davis' claims occurred at her place of employment, which is located in Fort Worth—less than two miles away from the federal courthouse.[1] Under these circumstances, the court

---

[1]It is undisputed that the underlying incident occurred at Westchester Plaza, a residential care or assisted living facility, located at 554 S. Summit Avenue in Fort Worth, Texas.

gives less deference to Davis' initial choice of forum.  *See, e.g., Rimkus Consulting Grp., Inc.*

*v. Balentine*, 693 F.Supp.2d 681, 690-91 (S.D. Tex. 2010) ("Although a plaintiff's initial

choice of forum is entitled to deference, the degree of deference is higher when [she] has

chosen [her] home forum.  Conversely, when a plaintiff is not a resident of the chosen forum,

or when the operative facts underlying the case did not occur in the chosen forum, a court

gives less deference to a plaintiff's choice." (citation omitted)).

V

The court next considers the private interest factors.

A

The first private interest factor examines the relative ease of access to sources of

proof.  Defendants maintain that this factor favors transfer to the Fort Worth Division

because all known witnesses to the events in question are residents of Tarrant County,[2] the

records relating to the policies and training of the Fort Worth Police Department are located

in Fort Worth, and the actual situs of the incident in question is an assisted living facility

located in Fort Worth.  Davis responds that this factor is neutral, contending that some of the

residents of the assisted living facility may move in the future, the physical location of Fort

Worth Police Department records is not significant because of technological advances, and

the parties' agreement to allow email service for discovery requests and responses mitigates

---

[2]Defendants note that the only possible exception is Bryant, who did not witness the
incident, and he actually *favors* transfer.

any inconvenience that might otherwise exist.[3]

The court holds that this factor weighs in favor of transfer. The underlying incident at the center of this lawsuit occurred in Fort Worth. Most of the parties to this lawsuit are residents of Tarrant County. And most (if not all) of the witnesses to the events in question reside in Fort Worth. Davis' unfounded speculation that some of the residents of the assisted living facility may move in the future does not support transfer. Not only is her claim unsupported by evidence, there is no suggestion that, if these residents did move, they would move to the Dallas Division. Davis' arguments concerning technological advances and the parties' joint decision to allow email service for discovery requests and responses are likewise unavailing, because it is undisputed that the underlying events in question occurred in Fort Worth. Regardless whether technological advances and email service would make litigating this case in the Dallas Division *possible*, there is still a *greater* ease of access to sources of proof in Fort Worth.

B

The second private interest factor examines the availability of compulsory process over witnesses. The parties do not dispute that the attendance of all relevant witnesses can be compelled in both the Dallas and Fort Worth Divisions. Accordingly, the court finds that

---

[3]Davis also argues that more than half of the parties to this litigation have hired attorneys located in Dallas, which she contends militates against transfer. This argument lacks force. The Fifth Circuit has noted that "[t]he factor of 'location of counsel' is irrelevant and improper for consideration in determining the question of transfer of venue." *In re Horseshoe Entm't*, 337 F.3d 429, 434 (5th Cir. 2003); *Cmty. Trust Bancorp, Inc. v. Cmty. Trust Fin. Corp.*, 2013 WL 3179506, at *5 (N.D. Tex. June 24, 2013) (Fish, J.) (same).

this factor is neutral.

C

The third private interest factor is the cost of attendance for willing witnesses. This factor "primarily concerns the convenience of nonparty witnesses." *USPG Portfolio Two, LLC v. John Hancock Real Estate Fin., Inc.*, 2011 WL 1103372, at *4 (N.D. Tex. Mar. 25, 2011) (Fitzwater, C.J.) (declining to consider parties' employees under third factor). A party seeking a transfer must "identify the 'key witnesses and the general content of their testimony.'" *Sargent v. SunTrust Bank, N.A.*, 2004 WL 1630081, at *3 (N.D. Tex. July 20, 2004) (Fitzwater, J.) (quoting *Bank One*, 211 F.Supp.2d at 812). "'The party seeking the transfer must specify clearly . . . the key witnesses to be called and their location and must make a general statement of what their testimony will cover.'" *AllChem Performance Prods., Inc. v. Oreq Corp.*, 2013 WL 180460, at *4 (N.D. Tex. Jan. 17, 2013) (Fitzwater, C.J.) (quoting 15 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3851, at 221-22 (3d ed. 2007)); *see Magana v. Toyota Motor Corp.*, 2010 WL 5108850, at *2 (N.D. Tex. Dec. 6, 2010) (Boyle, J.) (finding that defendant failed to show good cause for transfer based on this factor because it did not provide name, address, or proposed testimony of any witness who could more conveniently testify in the proposed transferee district). Although not determinative, this is the most significant factor in deciding a motion to transfer. *See Sw. Airlines Co. Profit Sharing 401(k) Comm. v. UBS Global Asset Mgmt. (Ams.), Inc.*, 2007 WL 268808, at *3 (N.D. Tex. Jan. 29, 2007) (Fitzwater, J.).

Defendants maintain that, even if Dallas is not significantly far from Fort Worth, this

- 7 -

factor still supports transfer because many of the nonparty witnesses are elderly or infirm residents of the assisted living facility (where the underlying events took place), and their travel to Dallas would be significantly more inconvenient and costlier to them. Davis responds that this factor is neutral because Dallas and Fort Worth are located only 30 minutes apart and are within the same metropolitan area. In their reply, defendants correctly note that, although Davis discusses the geographical distance between Dallas and Fort Worth, she fails to address defendants' more specific argument that many of the nonparty witnesses are elderly and infirm and that even a distance of 30 miles is still a substantial obstacle for them because of their advanced age.

The court holds that this factor favors transfer. It is undisputed that several nonparty witnesses—who are identified by name in defendants' briefing—are elderly and infirm residents of the assisted living facility where the underlying events occurred. It is also undisputed that it is likely to be significantly more inconvenient for these nonparty witnesses to travel to Dallas than it would be for them to travel within or to Fort Worth. Accordingly, the court concludes that this factor supports transfer.

D

The fourth private interest factor is a catch-all consideration that includes all other practical problems that make trial of a case easy, expeditious, and inexpensive. Defendants contend that this factor favors transfer and reiterate their arguments discussed above. Davis responds with her primary argument in opposition to transfer: that the Fort Worth jury pool is tainted against defendants, and transferring the case to the Fort Worth Division would

prejudice her for three reasons: (1) potential jurors, who would otherwise be sympathetic to Davis' case, could be struck for cause, (2) media coverage that is adverse to defendants might improperly influence jurors' decisions about how to allocate fault among the various defendants, and (3) jurors might view Davis unfavorably because she worked at the assisted living facility. Davis argues that the jury pool is tainted because, after defendants filed their motion to transfer, the State of Texas filed a lawsuit against three of the defendants in this suit, WGH, Westchester Prime, and Bryant, seeking civil penalties and permanent injunctive relief based on alleged violations of the Assisted Living Facility Licensing Act, Tex. Health & Safety Code Ann. § 247.001 *et seq.* (West 2010), and the Texas Deceptive Trade Practices-Consumer Protection Act, Tex. Bus. & Com. Code Ann. § 17.41 *et seq.* (West 2011). She asserts that several days after she filed suit, a local newspaper published an article detailing the claims alleged in the State of Texas' lawsuit, and that this publicity will taint the jury pool. Defendants reply that Davis' tainted jury pool argument is not a proper basis to decline to transfer the case.

The court concludes that the fourth factor is neutral. The fourth factor does not favor transfer because defendants have not identified a distinct basis—separate and apart from the arguments discussed above—that has not already been considered by the court under the first and third private interest factors. The fourth factor, however, does not weigh against transfer either. Davis' argument concerning a potentially tainted jury pool is misplaced. Even assuming that the potential of a tainted jury pool can or should be considered when evaluating whether a case should be transferred under 28 U.S.C. § 1404(a), Davis has not

adduced any evidence that the jury pool is tainted.  Her response brief cites a single local newspaper article, but nothing more.  There is nothing in the record to support the conclusion that this one article has so tainted the jury pool that any of the parties will be denied a fair trial in the Fort Worth Division.  *Cf. Snyder v. Phelps*, 2007 WL 3227213, at *1 (D. Md. Oct. 19, 2007) (denying motion to transfer based on negative publicity caused by multiple newspaper articles and noting that trial courts have power to use precautions that minimize the risk of jury prejudice).  Additionally, Davis' jury pool argument is misplaced because, even if she is correct that the jury pool has been tainted, this is a reason for a judge of the Fort Worth Division to consider moving the trial elsewhere—not a reason for a judge of the Dallas Division to decline to transfer the case in the first instance.

VI

The court now turns to the public interest factors.

A

The first public interest factor evaluates the comparative administrative difficulties due to court congestion in the potential venues.  Defendants do not address this factor in their motion.  In her response, Davis argues that this factor weighs against transfer because some matters filed in the Fort Worth Division have been assigned to judges serving in the Dallas Division, and a vacancy exists in the Fort Worth Division because Judge Means has recently taken senior status and has assumed a reduced caseload.  Davis' argument lacks force.  After Judge Means took senior status, Judge O'Connor relocated his duty station from the Dallas Division to the Fort Worth Division.  Civil cases pending in the Fort Worth Division are now

divided among three Fort Worth-based district judges rather than two. Although Judge O'Connor is also completing work on Dallas Division cases assigned to him before he changed his duty station, Davis has failed to demonstrate on the basis on which she relies that the Fort Worth Division is comparatively more congested than the Dallas Division. Accordingly, the court concludes that this factor is neutral. *See Franklin v. GMAC Mortg.*, 2013 WL 2367791, at *2 (N.D. Tex. May 30, 2013) (Fitzwater, C.J.) (adopting magistrate judge's recommendation) (noting that factors addressing, *inter alia*, court congestion were neutral or irrelevant as between the Dallas and Fort Worth Divisions).

B

The second public interest factor evaluates the local interest in the dispute. "This factor generally favors the venue where the acts giving rise to the lawsuit occurred." *Metromedia Steakhouses Co. v. BMJ Foods P.R., Inc.*, 2008 WL 794533, at *3 (N.D. Tex. Mar. 26, 2008) (Fitzwater, C.J.) (citing *Spiegelberg v. Collegiate Licensing Co.*, 402 F.Supp.2d 786, 792 (S.D. Tex. 2005)). As discussed above, it is undisputed that the acts and omissions giving rise to the lawsuit occurred substantially, if not entirely, within the Fort Worth Division. And Davis, a resident of Tarrant County (in which Fort Worth is located), has sued the City of Fort Worth, as well as members of the Fort Worth Police Department. Accordingly, the court concludes that this factor weighs in favor of transfer. *Cf. Thomas v. City of Fort Worth, Tex.*, 2008 WL 4225556, at *2 (N.D. Tex. Sept. 15, 2008) (O'Connor, J.) ("The citizens of Dallas County or the Dallas Division have little or no interest in resolving disputes involving a citizen of the City of Granbury and the City of Fort Worth.").

- 11 -

C

The third factor addresses the familiarity of the forum with the law that will govern the case.  The court finds that this factor is neutral, since the judges of both the Dallas Division and Fort Worth Division are equally capable of interpreting and applying the federal law and Texas law that applies to Davis' claims.

D

The fourth public interest factor considers the avoidance of unnecessary problems of conflict of laws or the application of foreign law.  Neither side argues that there is a problem of conflict of laws or applying foreign laws.  The court concludes that this factor is neutral.

E

Considering all the relevant factors holistically, the court holds that the Fort Worth Division is clearly more convenient when compared to the Dallas Division.  Apart from the factors that are neutral, the first and third private interest factors, as well as the second public interest factor, clearly support transfer.  On the other side of the ledger, Davis has not identified a single factor weighing against transfer.  Here, as in *Franklin*, "no [§] 1404(a) factor appears to actually favor maintaining this . . . case in the Dallas Division."  *See Franklin*, 2013 WL 2367791, at *2.  Put simply, there is nothing in the record suggesting that this case is, in any meaningful way, related to the Dallas Division.  Even if Fort Worth and Dallas are only 30 miles apart and within the same metropolitan area, they are nevertheless distinct divisions, as contemplated by Congress, *see* 28 U.S.C. § 124(a)(1)-(2), and defendants have easily carried their burden to demonstrate good cause for transferring the

- 12 -

case to the Fort Worth Division.  *See Martinez v. City of Fort Worth, Tex.*, 2003 WL 21289654, at *2 (N.D. Tex. May 28, 2003) (Lynn, J.) (noting that even though Fort Worth and Dallas Divisions are not significantly far apart, transfer to Fort Worth Division was still warranted).

*   *   *

For the reasons explained, defendants' motion to transfer venue is granted, and this case is transferred to the Fort Worth Division of the Northern District of Texas.  The clerk of court shall effect the transfer according to the usual procedure.

**SO ORDERED.**

June 25, 2014.

SIDNEY A. FITZWATER
CHIEF JUDGE